# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL DEGROAT, Individually and as Administrator of the Estate of Derek DeGroat, Sheila Marie DeGroat, Breeanna DeGroat, and Derek Edward Michael DeGroat by Lindsey Erk as parent and natural guardian,

    Plaintiffs,

        v.

SERGEANT PAUL V. CAVALLARO, et al.,

    Defendants.

CIVIL ACTION NO. 3:16-cv-1186

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion to Dismiss (Doc. 26) filed by Defendants Trooper Brian E. Rickard, Corporal Benjamin W. Clark, Corporal Christopher Cole, Corporal James E. Travis, Trooper Wayne Thomas, Corporal Derek Felsman, Trooper James A. Hitchcock, Trooper Brett Ast, and Trooper Michael Oakes (collectively, the "moving Defendants"). For the reasons that follow, the moving Defendants' Motion will be granted in part and denied in part.

## I. Background

The well-pleaded facts as set forth in Plaintiffs' Amended Complaint (Doc. 24) are as follows:

This action stems from the death of Derek DeGroat (the "decedent"), who was shot eleven (11) times and killed by members of the Pennsylvania State Police ("PSP"). (Compl. ¶ 19.) On December 21, 2015, the decedent was visiting Plaintiff Sheila DeGroat, his mother, and Plaintiff Breeanna DeGroat, his sister, at the family's home in Wayne County, Pennsylvania. (*Id.* ¶¶ 2, 17.) During this visit, the decedent lawfully possessed an unloaded

firearm. (*Id.* ¶ 19.) A verbal disagreement took place between the decedent and his then-girlfriend, Lindsey Erk. (*Id.* ¶ 18.) At some point, members of the PSP arrived at the family home, including the moving Defendants. (*Id.* ¶ 13.) Around 11:53 P.M., one or more of the PSP officers on the scene fired thirty-nine (39) shots in the direction of the decedent, striking him eleven (11) times and killing him. (*Id.* ¶¶ 2, 19.) The decedent did not point or aim his unloaded firearm at the PSP officers at any time leading up to the shooting. (*Id.* ¶ 19.)

This suit is brought by Michael DeGroat, individually as the decedent's father and as Administrator of the Estate for the decedent; Sheila Marie DeGroat, the decedent's mother; Breeanna DeGroat, the decedent's sister; and Derek Edward Michael DeGroat, the decedent's son, by his parent and natural guardian Lindsey Erk. (*Id.* ¶¶ 2-3.) The Amended Complaint named as Defendants Sergeant Paul V. Cavallaro, Station Commander of the Wayne County Honesdale Troop R Barracks of the PSP; Captain Christopher L. Paris, the "Troop R" Commanding Officer of the PSP; the moving Defendants, all of whom are PSP officers who were present at the DeGroat family home on the night of the incident; and John Doe's numbered 1-15, who are presently unknown PSP officers who were also present at the DeGroat family home on the night of the incident. (*Id.* ¶¶ 11-14.)[1] The moving Defendants are being sued in their official and individual capacities. (*Id.* ¶ 13.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not

---

[1] On February 10, 2017, the Court approved a stipulation of discontinuance to Defendants Cavallaro and Paris without prejudice. (Doc. 34.)

consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Plaintiffs' Amended Complaint (Doc. 24) lists nine causes of action: (1) a claim under 42 U.S.C. § 1983 for a violation of the Fourth and Fourteenth Amendments (Count I); (2) an additional claim under § 1983 for a violation of the Fourth Amendment (Count II); (3) a claim for negligent infliction of emotional distress ("NIED") (Count III); (4) a claim labeled as "intentional tort" (Count IV); (5) a claim alleging a breach of the duty of care (Count V); (6) a claim alleging a failure to intervene against Defendants Cavallaro and Paris (Count VI); (7) a claim for wrongful death (VII); (8) claims for assault and battery (Count VIII); and (9) a claim labeled as "zone of danger" (Count IX[2]). The moving Defendants filed their Motion to Dismiss on November 30, 2016, seeking to dismiss Plaintiffs' Amended Complaint in part. (Doc. 26.) The moving Defendants argue

---

[2] Irrespective of the label, it appears that Plaintiffs are raising a claim for intentional infliction of emotional distress ("IIED") in this Count.

4

that the Fourteenth Amendment substantive due process claim asserted in Count I should be dismissed because Plaintiffs' federal-law claim is governed by the Fourth Amendment and its "reasonableness" standard. (Doc. 27, at 3-4.) Additionally, the moving Defendants contend that the state-law claims contained in Counts III-IX should be dismissed as barred by state sovereign immunity. (*Id.* at 4-5.) Plaintiffs filed a Brief in Opposition on February 10, 2017. (Doc. 35.) The Motion is ripe for disposition.

A. **Plaintiffs' Fourth and Fourteenth Amendment Claims in Count I**

Count I of Plaintiffs' Amended Complaint alleges that the moving Defendants violated the decedent's Fourth and Fourteenth Amendment rights by causing him to be shot and killed without justifiable reason and with the use of unreasonable and excessive force. (Compl. ¶ 28.) Similarly, Count II of Plaintiffs' Amended Complaint alleges that the moving Defendants violated the decedent's Fourth Amendment right by engaging in "conduct that is shocking to the conscience" and "offensive to the community's sense of fair play and decency," resulting in the decedent "sustain[ing] life ending injuries." (*Id.* ¶¶ 37, 40.) Both Counts clearly concern the violation of the decedent's federal rights with respect to the fatal shooting.

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court held that "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273 (internal quotation marks and citations omitted). Specific to the present case, "'[c]laims of unreasonable search and seizure are . . . governed by the explicit constitutional text in the Fourth Amendment and may not therefore, [be] brought as claims for violation of the right to substantive due process.'"[3] *Mitchell v. Luckenbill*,

---

[3] The facts alleged in the Amended Complaint make clear that Plaintiffs are raising a claim for a violation of substantive due process, not procedural due process. (*See also* Doc. 35 ¶ 16.)

5

680 F. Supp. 2d 672, 688 (M.D. Pa. 2010) (quoting *McDonald v. Darby Borough*, Civ. A. No. 07-4588, 2008 WL 4461912, at *6 (E.D. Pa. Oct. 3, 2008)). "The Third Circuit has held 'that *Albright* commands that claims governed by explicit constitutional text may not be grounded in substantive due process." *Id.* at 689 (quoting *Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998)).

Here, Counts I and II allege that the moving Defendants violated the decedent's Fourth and Fourteenth Amendment rights when they fatally shot him. (Compl. ¶¶ 28, 40.) The Fourth Amendment's reasonableness standard explicitly governs claims alleging unlawful seizures, including "deadly seizures." *See Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992); *Curley v. Klem*, 499 F.3d 199, 203 n.4 (3d Cir. 2007) ("[T]here is 'no question' that a shooting constitutes a seizure under the Fourth Amendment." (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985))); *Zion v. Nassan*, 283 F.R.D. 247, 255-56 (W.D. Pa. 2012). Accordingly, because Plaintiffs' federal-law claim is grounded in the Fourth Amendment, the Fourteenth Amendment substantive due process claim contained in Count I will be dismissed with prejudice. *See O'Malley v. Lukowich*, No. 3:08-CV-0680, 2008 WL 4861477, at *6-*7 (M.D. Pa. Nov. 7, 2008) ("The Fourth Amendment . . . provides an explicit textual source of constitutional protection to Plaintiff, so any reliance on the substantive component of the Due Process Clause is misplaced.").

Furthermore, Count I also appears to include a claim against the moving Defendants for the failure to intervene. (Compl. ¶ 29.) However, in order to state a § 1983 claim for failure to intervene, "a plaintiff must show that an officer had a reasonable opportunity to intervene in the face of a constitutional violation and (s)he simply refused to do so." *Walters v. Pa. State Police*, No. 1:13-CV-2275, 2014 WL 3908150, at *11 (M.D. Pa. Aug. 11, 2014) (citing *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). That is, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith*, 293 F.3d at 651. Here, the Amended Complaint is insufficient because it fails to allege any facts demonstrating that any Defendant(s) had a reasonable

6

opportunity to intervene and prevent a constitutional violation but failed or refused to do so. *See Walters*, 2014 WL 3908150, at *12 n.6. Accordingly, to the extent Count I also attempts to assert a claim for failure to intervene against the moving Defendants, this claim will be dismissed without prejudice.

Accordingly, Count I will be dismissed. Plaintiffs' Fourteenth Amendment substantive due process claim will be dismissed with prejudice. Plaintiffs' failure to intervene claim will be dismissed without prejudice. Because Plaintiffs' Fourth Amendment claims in Counts I and II are redundant, the Court will dismiss Count I and allow Plaintiffs to proceed on their Fourth Amendment claim in Count II against the moving Defendants and John Doe Defendants, based on the well-pleaded allegations contained in both Counts.

**B.    Plaintiffs' State-Law Claims in Counts III-IX**

Counts III-IX of the Amended Complaint are predicated on state-law claims. The moving Defendants contend that these claims should be dismissed because they are barred by state sovereign immunity. (Doc. 27, at 4-5.) In response, Plaintiffs argue that state sovereign immunity does not bar these claims because the moving Defendants were not acting within the scope of their duties. (Doc. 35 ¶¶ 22–26.) The Court will deny the moving Defendants' Motion to Dismiss these claims based on state sovereign immunity at this time.

The Pennsylvania General Assembly has enacted 1 Pa. Cons. Stat. Ann. § 2310, which provides in pertinent part:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, *and its officials and employees acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

7

(emphasis added). Section 2310 thus generally "shields Commonwealth officials and employees from civil liability for torts committed 'within the scope of their duties.'" *Zion v. Nassan*, 283 F.R.D. 247, 265 (W.D. Pa. 2012) (citation omitted); *see Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 681-82 (M.D. Pa. 2010) ("Sovereign immunity bars claims that are asserted against the Commonwealth, its agencies, and Commonwealth employees acting within the scope of their office or employment.") (citing § 2310). "Even where a plaintiff asks for monetary damages against a [Commonwealth] defendant in his individual capacities, sovereign immunity applies." *Jackson v. Nassan*, No. 2:08-cv-1054, 2009 WL 2707447, at *6 (W.D. Pa. Aug. 26, 2009). Unlike employees and officers of municipal agencies, employees of the Commonwealth "acting within the scope of [their] employment or duties [are] protected by sovereign immunity from the imposition of liability for intentional tort claims." *Holt v. Nw. Pa. Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997) (citing *LaFrankie v. Miklich*, 618 A.2d 1145 (Pa. Commw. Ct. 1992)). The General Assembly has enumerated only nine strictly construed exceptions to Pennsylvania's sovereign immunity statute. *See* 42 Pa. Cons. Stat. Ann. § 8522(b).[4]

Here, it is undisputed that the moving Defendants are employees of the Commonwealth. *See also Zion*, 283 F.R.D. at 264. Plaintiffs do not contend that any of the narrow exceptions to state sovereign immunity apply to their claims. Instead, Plaintiffs argue that the moving Defendants were not acting within the scope of their employment and, consequently, sovereign immunity does not

---

[4] Under § 8522, sovereign immunity is not a valid defense in certain limited situations involving the negligence of a Commonwealth official or employee in suits for damages caused by: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.

apply. *See Schell v. Guth*, 88 A.3d 1053, 1067 (Pa. Commw. Ct. 2014) ("[I]f a defendant who is a Commonwealth employee was not acting within the scope of employment, he cannot claim the affirmative defense of sovereign immunity."). In order to determine whether a Commonwealth employee was acting within the scope of his or her employment, courts must consider whether the employee's conduct: (a) is of a kind and nature that the employee is employed to perform; (b) occurs substantially within the authorized time and space limits; and (c) is actuated, at least in part, by a purpose to serve the employer. *Natt v. Labar*, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988). Additionally, "if force is intentionally used by the employee against another," courts must considered whether "it is not *unexpected* by the employer." *Id.* (emphasis added).

Under Pennsylvania law, "an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of [his or her] employment." *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998). Specific to this case, "[t]he relevant question in determining whether an officer acted outside the scope of his employment is whether the force used by the officer was 'of the kind that may reasonably be expected of a police officer under similar circumstances.'" *Meadows v. Se. Pa. Transp. Auth.*, No. 16-2074, 2017 WL 412806, at *3 (E.D. Pa. Jan. 31, 2017) (quoting *Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 397-99 (W.D. Pa. 2014)). "Since an employee is generally authorized to use only 'reasonable' measures to achieve a result desired by his or her employer, an 'outrageous' act may lie beyond the scope of his or her employment even where it constitutes 'a means of accomplishing an authorized result.'" *Zion*, 283 F.R.D. at 267 (citing *Lunn v. Yellow Cab Co.*, 169 A.2d 103, 104 (Pa. 1961)).

"Courts in this district do not presume that 'immunity is automatically warranted' in every circumstance for every Commonwealth employee." *Mobley v. Lantz*, No. 1:13-cv-1804, 2014 WL 3810119, at *23 (M.D. Pa. July 31, 2014) (quoting *Shipman v. Gelso*, 3:11-cv-1162, 2011 WL 5554252, at *5 (M.D. Pa. Nov. 15, 2011)). As such, "[a] court may deny a motion to dismiss on the basis of state sovereign immunity where it is unclear from the facts of the case whether the Commonwealth employees were actually acting within the scope of their employment." *Id.*

Here, the Court concludes that it would be premature to dismiss Plaintiffs' state-law claims against the moving Defendants in their individual capacities on the basis of sovereign immunity. The Amended Complaint alleges that the moving Defendants fired thirty-nine bullets in the direction of the decedent, striking him eleven times and killing him. The Amended Complaint further alleges that the decedent did not engage in conduct warranting the moving Defendants' use of deadly force against him. The severity of the harm and the nature of the encounter as alleged suggest, at the pleading stage, that the decedent was "seized . . . under circumstances not calculated to serve the interests of the PSP. . . ." *Strothers v. Nassan*, No. 08-1624, 2009 WL 976604, at *10 (W.D. Pa. Apr. 9, 2009). Accordingly, the Court will deny the moving Defendants' Motion to Dismiss Counts III-IX based on the defense of state sovereign immunity at this time. *See id.*; *see also Zion*, 283 F.R.D. at 267 (denying motion for judgment on the pleadings based on state sovereign immunity when the complaint asserted tort claims stemming from the fatal shooting of a fleeing motorist by a PSP officer, noting that "[a] high degree of 'outrageousness' can take an employee's actions 'outside the scope' of his or her employment) (citations omitted); *cf. Ickes v. Grassmeyer*, 30 F. Supp. 3d 375, 399 (W.D. Pa. 2014) (granting motion to dismiss based on state sovereign immunity when the plaintiff's tort claims only alleged that PSP officers used "roughhouse tactics" and did not suggest that the

officers "used deadly weapons or otherwise placed [plaintiff] at serious risk of permanent injury"). The Court will be in a better position to consider this defense when the record is fully developed. The moving Defendants remain free to raise this defense in a motion for summary judgment.

However, although the Court declines to dismiss Plaintiffs' state-law claims against the moving Defendants in their individual capacities based on state sovereign immunity, the Court will dismiss without prejudice Counts IV and VI for the reasons that follow, and will dismiss with prejudice all claims pursuant to 42 U.S.C. § 1983 against the PSP officers in their official capacities for retrospective monetary relief, as well as all state-law claims against the PSP officers in their official capacities.

Count IV is entitled "intentional tort," and alleges that the moving Defendants "intentionally committed tortious activity against [the decedent] in that they intentionally used excessive force causing his death." (Compl. ¶ 51.) This Count further alleges that on the night of the incident, the moving Defendants "committed assault and battery upon [the decedent]. . . ." (*Id.* ¶ 52.) Although it is unclear from the label, it appears Count IV raises claims for assault and battery against the moving Defendants. However, these intentional-tort claims are already expressly asserted in Count VIII. Accordingly, the Court will dismiss Count IV without prejudice to Plaintiffs filing a second amended complaint that alleges a different, specific intentional tort more clearly.

Additionally, Count VI is entitled "failure to intervene," and appears to raise state-law claims against Defendants Cavallaro and Paris only. The parties have

agreed to discontinue this action without prejudice against these two Defendants. (Doc. 34.) Therefore, the Court will dismiss Count VI without prejudice.[5]

Separately, Count IX is entitled "zone of danger." The Court reads this Count to allege a claim for intentional infliction of emotional distress ("IIED"), as it specifically uses this language in the body of the Count and asserts that the Defendants' conduct was "extreme and outrageous." (Compl. ¶¶ 76-77); *see Mohammed v. John Doe Pa. State Police Sup'rs*, No. 11-5004, 2013 WL 5741788, at *11 (E.D. Pa. Oct. 23, 2013). Plaintiffs invocation of the phrase "zone of danger" refers to Plaintiffs "witnessing" the incident "and being traumatized thereby." (Compl. ¶ 76.) Although unclear, the Court reads Plaintiffs' use of the phrase "zone of danger" in this context as attempting to reference one factual scenario in which a plaintiff may be eligible to bring a claim for negligent infliction of emotional distress ("NIED"). *See Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 (Pa. Super. Ct. 2012) (citation omitted) (explaining that, under Pennsylvania law, "the cause of action for [NIED] is restricted to four factual scenarios," one of which is when "the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury," and another of which is when "the plaintiff observed a tortious injury to a close relative"); *see also Burnett v. Swift Transp., Inc.*, No. 3:07-cv-1490, 2011 WL 533603, at *11 (M.D. Pa. Feb. 8, 2011) (explaining the latter theory of NIED). However, Plaintiffs expressly assert a claim for NIED in Count III. Thus, in the interest of clarity, Plaintiffs may proceed on their claim for IIED in Count IX. To the extent Count IX also attempts to raise a claim for NIED, it will be dismissed with prejudice because such a claim is redundant to Count III.

---

[5] Likewise, to the extent Count III attempts to assert unique claims of negligence against Defendants Cavallaro and Paris, these claims will be dismissed without prejudice based on the stipulation of discontinuance. (Compl. ¶¶ 45-48.)

Lastly, the Court will dismiss with prejudice all claims pursuant to 42 U.S.C. § 1983 seeking retrospective monetary relief against the Defendants in their official capacities, as these claims are "in all respects other than name, to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), and therefore are barred by the Eleventh Amendment. The relevant entity in this case is the PSP, which is an arm of the Commonwealth of Pennsylvania. *See Walters v. Pa. State Police*, No. 1:13-CV-2275, 2014 WL 3908150, at *6 (M.D. Pa. Aug. 11, 2014). Because the Commonwealth has not waived its Eleventh Amendment immunity for purposes of suits like the one at bar, and because the Commonwealth's immunity has not been abrogated in this case, the Eleventh Amendment bars Plaintiffs' § 1983 claims for retrospective monetary damages against the PSP officers in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) (holding that a state official sued in her official capacity is not a "person" under § 1983); *Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 411 (M.D. Pa. 2008). Additionally, all of Plaintiffs' state-law claims against members of the PSP in their official capacities are barred as well. *See Pa. State Police v. Klimek*, 839 A.2d 1173, 1174 n.1 (Pa. Commw. Ct. 2003) (noting that the PSP enjoys sovereign immunity "except for those actions where immunity is specifically waived," which is not the case here); *see also Walters*, 2014 WL 3908150, at *6; *Larsen*, 553 F. Supp. 2d at 415.

**C.     Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). Here, because Plaintiffs might be able to allege facts sufficient to state a claim for the failure to intervene against one or more of

13

the moving Defendants, the Court will grant leave to amend that claim. Additionally, the Court will grant Plaintiffs leave to amend Count IV to state a claim for a specific intentional tort that is not already asserted in a separate Count. Amendments to all other dismissed claims, however, would be futile because they fail as a matter of law.[6]

### IV. Conclusion

For the above stated reasons, the moving Defendants' Motion to Dismiss (Doc. 26) will be granted in part and denied in part.

An appropriate order follows.


May 17, 2017                                         /s/ A. Richard Caputo
Date                                                 A. Richard Caputo
                                                     United States District Judge

---

[6] This does not include the claims against Defendants Cavallaro and Paris, which the Court will dismiss without prejudice based on the parties' stipulation.