# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL DEGROAT, *et al.*, | NO. 3:16-CV-01186 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| DEREK FELSMAN, *et al.*, | |
| Defendants. | |

## **MEMORANDUM**

Presently before me is a Motion for Summary Judgment filed by Defendants Derek Felsman, Brett Ast, and Michael Oakes (Doc. 89). Plaintiffs allege that Defendants, who are all Pennsylvania State Police Troopers, used excessive force when responding to a 911 call at the DeGroat residence, which led to Derek DeGroat's death. (*See* Doc. 101). Defendants do not move for summary judgment on Plaintiffs' excessive force claim, though; instead, Defendants argue that judgment must be entered in their favor on Plaintiffs' state law claims because they enjoy sovereign immunity as employees of the Commonwealth of Pennsylvania. Additionally, Defendants argue they are entitled to summary judgment on Plaintiffs' failure to intervene claim, because the undisputed evidence shows they had no reasonable opportunity to intervene in each other's consitutitonal violations. Because the applicability of sovereign immunity is tied up with the excessive force claim, Defendants' Motion will be denied as to the state law claims. The Motion will be granted as to the failure to intervene claim, however, because the evidence is indeed insufficient to show Defendants had a reasonable opportunity to intervene.

## **I. Background**

The undisputed facts viewed in the light most favorable to Plaintiffs are as follows: Defendants Felsman, Oakes, and Ast are Troopers employed by the Pennsylvania State Police. (Doc. 105 at ¶¶ 1-3 ("Plaintiffs' Counterstatement of Material and Undisputed Facts")). Defendants were on duty on December 21, 2015. (*Id.* ¶¶ 4-7). On that day, "it was initially relayed" to Defendants "that there was a domestic call that involved an armed,

suicidal male at the [DeGroat residence.]" (*Id.* ¶ 7). That male was Derek DeGroat. (*Id.* ¶ 8).

"Upon arrival to the scene, the Troopers were able to see that DeGroat had three long guns" on him: "[o]ne in each hand and another slung over his back." (*Id.* ¶ 11). "Multiple commands, by multiple Troopers, were given to DeGroat" to put his guns down, "do it now," and "stop moving." (*Id.* ¶ 12). DeGroat did not initially respond to these commands—instead, he continued walking on the front lawn of the residence with his guns in hand. (*See id.* ¶ 13). "DeGroat then lowered the long guns by his side." (*Id.* ¶ 14).

At this point, the parties differ in their accounts. Defendants maintain that DeGroat pointed his guns in the direction of the Troopers, while Plaintiffs contend that DeGroat merely lowered his weapons and did not threaten the Troopers at all. (*See id.* ¶¶ 15-17). Either way, after DeGroat lowered his guns by his side, Defendants opened fire on DeGroat for either four or five seconds. (*See id.* ¶¶ 18-19). DeGroat "fell to the ground immediately, less than a second after the shooting started, and the Defendants continued to shoot him while he lay on the ground for almost four seconds." (Doc. 106 at 9 (alterations omitted)). Altogether, Defendants shot at DeGroat thirty-nine (39) times, with eleven (11) bullets striking DeGroat in "the right should area, abdomen, chest, and legs." (*Id.*). But according to Plaintiffs, "Defendants admitted that they no longer perceived [DeGroat] to be a threat once he hit the ground." (*Id.*)

Plaintiffs, who include the Estate of Derek DeGroat and his close family members, filed their Third Amended Complaint on December 21, 2018 (Doc. 101). They allege seven causes of action against Defendants: two constitutional claims brought pursuant to 42 U.S.C. § 1983 (failure to intervene to prevent excessive force (Count I) and excessive use of force (Count II)); and five state law causes of action (negligent infliction of emotional distress (Count III); false imprisonment (Count IV); negligence (Count V); wrongful death (Count VI); and assault and battery (Count VII)). (*See id.*). Defendants moved for summary judgment on December 10, 2018 (Doc. 89), anticipating Plaintiffs' Third Amended Complaint, and argue the undisputed evidence shows that (1) Defendants had no realistic

2

or reasonable opportunity to intervene to prevent the excessive use of force, and (2) Defendants acted within the scope of their employment, shielding them with sovereign immunity under 1 Pa. Cons. Stat. § 2310. (*See generally* Doc. 93). Plaintiffs respond that the questions of sovereign immunity and failure to intervene are ones for the jury, given the facts they consider material are in dispute. (*See generally* Doc. 106). Defendants timely filed their reply to Plaintiffs' arguments. (Doc. 111).

The Motion has thus been fully briefed and is now ripe for review.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-movant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

## III. Discussion

### A. State Law Claims

Defendants first argue that Plaintiffs' state law claims are "barred" by sovereign immunity because Defendants were acting within the scope of their employment—which is all that is required under Pennsylvania law for state employees to enjoy sovereign immunity. (Doc. 90 at 14-20). Plaintiffs respond that Defendants are not entitled to sovereign immunity because whether Defendants' actions fell outside the scope of their employment is a disputed question of fact for the jury to resolve. (Doc. 106 at 10-17).

Pennsylvania employees do enjoy immunity from most state law claims, provided they act "within the scope of their duties." 1 Pa. Cons. Stat. § 2310; *Kintzel v. Kleeman*, 965 F. Supp. 2d 601, 606 (M.D. Pa. 2013) (citing *La Frankie v. Miklich*, 618 A.2d 1145, 1148 (Pa. Commw. Ct. 1992)). If an employee acts outside the scope of his employment, that act does not occur within the scope of his duties and he is thus not shielded by sovereign immunity. *See Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) (citing *Maute v. Frank*, 657 A.2d 985, 986 (Pa. Super. Ct. 1995)). Under Pennsylvania law, "conduct is within the scope of employment where: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by purpose to serve the master." *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (quoting Restatement (Second) of Agency § 236 (1958)). But where "the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason," the employee's conduct falls outside the scope of employment "as a matter of law." *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979).

That last proviso is critical. If an employee's actions constitute excessive force in violation of the Fourth Amendment, it stands to reason that those same actions could fall

4

outside the scope of employment under *Fitzgerald*'s "excessive and so dangerous" standard. Unsurprisingly, federal district courts in Pennsylvania routinely hold that where excessive force is in question, so too is whether that use of force fell within the scope of the defendant's employment. *Barkus v. Knirnschild*, No. CV 15-704, 2018 WL 1244515, at *13 (W.D. Pa. Mar. 9, 2018) ("[T]he Court already has held that . . . a jury reasonably could conclude that Defendant's shooting of Decedent was objectively unreasonable. It follows, then, that the conduct may be seen as sufficiently outrageous and 'unexpectable by the master' that sovereign immunity does not apply."); *Leone v. Stipcak*, No. 3:CV-12-429, 2015 WL 75159, at *11 (M.D. Pa. Jan. 6, 2015) (denying summary judgment to the defendant on the basis of sovereign immunity because if the jury could find the defendant's use of force excessive, it could also find the use of force fell outside the scope of the defendant's employment); *Bowman v. Reilly*, No. CIV.A. 09-1322, 2010 WL 831412, at *10 (E.D. Pa. Mar. 4, 2010) (same); *Savage v. Judge*, 644 F. Supp. 2d 550, 565-66 (E.D. Pa. 2009) (same); *Wesley v. Hollis*, No. CIV.A. 03-3130, 2007 WL 1655483, at *16 (E.D. Pa. June 6, 2007) (same); *cf. Kircher v. Pa. State Police Dep't*, No. 4:13-CV-02143, 2016 WL 4379143, at *28 (M.D. Pa. Aug. 17, 2016) ("[U]se of *reasonable* force to effect a lawful arrest does not strip away from the officers the immunity that they enjoy as agents of the Commonwealth, when performing the Commonwealth's work." (emphasis added)); *Ortiz v. Baird*, No. CIV.A. 10-1753, 2013 WL 1290555, at *9 (W.D. Pa. Feb. 15, 2013), *report and recommendation adopted*, 2013 WL 1289258 (W.D. Pa. Mar. 26, 2013) (granting summary judgment on state law claims on the basis of sovereign immunity because "the evidence of record show[ed] that Defendants' use of force was not excessive"). *Contra Lopez v. Springettsbury Twp.*, No. 1:16-CV-1977, 2017 WL 6940697, at *6-7 (M.D. Pa. Mar. 3, 2017), *report and recommendation adopted*, 1:16-CV-1977 (M.D. Pa. May 2, 2017) (granting motion to dismiss the plaintiff's state law claims on sovereign immunity grounds, despite denying the motion as to an excessive force claim, because the defendant-officer's alleged use of force "fell squarely within the scope of his official duties as a police officer").

Thus, to grant Defendants judgment on the state law claims, I would have to address

the merits of Plaintiffs' excessive force claim—which is not to say the boundaries of excessive force and the scope of employment are always conterminous. But the question of whether Defendants used excessive force is going to trial because Defendants did not move for summary judgment on that claim. I therefore decline to decide if Defendants' actions fell within the scope of their employment, because "a determination at trial . . . may eliminate the need for deciding" the question at all. *United States ex rel. Greenville Equip. Co. v. U.S. Cas. Co.*, 180 F. Supp. 715, 717 (D. Del. 1960); *see Consol. Rail Corp. v. Maddox*, 116 F.R.D. 672, 675 (D. Del. 1987) (denying motions for partial summary judgment "because Count III could become irrelevant depending on the outcome of the trial"); 10A Charles A. Wright *et al.*, *Federal Practice & Procedure* § 2728 (4th ed.) (noting courts "have reserved their ruling on a motion for summary judgment until after the trial of a separate issue"). Accordingly, Defendants' Motion will be denied without prejudice to raising sovereign immunity as a defense at trial.[1]

**B.     Failure to Intervene**

Defendants next argue that the undisputed evidence shows they had no reasonable opportunity to intervene in their own alleged constitutional violations. (Doc. 90 at 23-24). By their estimation, the shooting lasted "all but four seconds," during which it would have been "impossible" for any one Defendant to stop his own use of force and that of the other two Defendants. (*Id.* at 24). Plaintiffs respond that the brevity of the shooting is not dispositive, and that regardless, four to five seconds gave Defendants a reasonable opportunity to "yell the command 'cease fire' or 'he's down.'" (Doc. 106 at 19-20).

"Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force[.]" *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "However, an officer is only liable if there is a realistic and reasonable

---

[1]     Because Plaintiffs' state law claims survive, I need not address Defendants' subsequent arguments that presume the entry of judgment in their favor on those claims. (*See* Doc. 90 at 21-23 ("Since Defendants are entitled to judgment on Plaintiffs' state law claims, . . . .")).

6

opportunity to intervene." *Id.* at 651 (citing *Putman v. Gerloff*, 639 F.2d 415, 423-24 (8th Cir. 1981) (liability exists only if the non-intervening officer saw the excessive use of force or had time to reach the offending officer)). In determining whether a realistic and reasonable opportunity to intervene existed, courts often consider "the temporal length of the alleged assault, the proximity of the non-intervening officer to the alleged assault, and the ability of the non-intervening officer to perceive and/or hear the alleged assault." *Yarnall v. Mendez*, 509 F. Supp. 2d 421, 433 (D. Del. 2007) (citations omitted).

I agree with Defendants. No reasonable jury could conclude that Defendants had a "realistic and reasonable" opportunity to intervene. Viewing the evidence in the light most favorable to Plaintiffs, Derek DeGroat "went down to the ground in less than one (1) second" after all three Defendants opened fire; "Defendants continued shooting Derek on the ground for the next four (4) seconds." (Doc. 106 at 20). At best, therefore, Defendants had a little less than five (5) seconds to stop themselves and each other from shooting. The brevity of the incident alone could be sufficient to grant judgment in Defendants' favor. *See Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) ("The three blows were struck in such rapid succession that [the officer] had no realistic opportunity to attempt to prevent them."); *Bah v. City of New York*, 319 F. Supp. 3d 698, 714 (S.D.N.Y. 2018) (officer had no reasonable opportunity to intervene where "the shooting was over in an extremely brief period of time—perhaps two seconds"); *Buchanan v. W. Whiteland Twp.*, No. CIV. A. 08-CV-462, 2009 WL 54949, at *4 (E.D. Pa. Jan. 7, 2009) ("[T]he events took place so quickly that there was no realistic or reasonable possibility for [the officers] to intervene to prevent [another officer] from using his taser on Plaintiff."); *Yarnall v. Mendez*, 509 F. Supp. 2d 421, 426, 433-34 (D. Del. 2007) (officers had no reasonable and realistic opportunity to prevent the use of a taser against the plaintiff in an altercation lasting "no longer than two to three seconds"); *La v. Hayducka*, 269 F. Supp. 2d 566, 581 (D.N.J. 2003) (officer had no realistic or reasonable opportunity to intervene in another officer's "split-second decision" to fire "one gun shot . . . during a tense confrontation").

7

There is a more fundamental problem with Plaintiffs' claim, though: Defendants cannot be liable under a failure to intervene theory because the undisputed evidence shows they were all directly involved in the use of force. (*See* Doc. 93 at 23-24 (arguing each Defendant was "occupied" in his own use of force and thus had no opportunity to intervene); Doc. 111 at 6). Failure to intervene is a theory of liability that "requires the plaintiff to show that a defendant *who did not directly participate in the alleged constitutional wrong* was aware it was happening or about to happen and had a realistic opportunity to prevent it, but instead stood by." *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *10 (N.D. Ill. Feb. 6, 2014) (citation omitted) (emphasis added). Where a defendant is alleged or shown to have participated directly in an alleged constitutional violation, the proper claim is not for failure to intervene but instead for the underlying constitutional violation. *See Flint v. City of Milwaukee*, 91 F. Supp. 3d 1032, 1063 (E.D. Wis. 2015) ("Lt. Felician is not liable for failing to intervene. This result obtains because he directly participated in the [alleged wrongs] and thus is personally liable for his own actions. An officer cannot intervene in his own constitutional violation."); *Page v. Chambers*, No. 5:14CV00218-JM-JJV, 2015 WL 3964675, at *4 (E.D. Ark. June 29, 2015) (dismissing failure to intervene claims against defendants who were "alleged to have been direct participants in the excessive force"); *Cuellar v. Love*, No. 11-CV-3632 NSR, 2014 WL 1486458, at *8 (S.D.N.Y. Apr. 11, 2014) ("Of course, where the officer is a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable."); *Morgan v. Cty. of Nassau*, 720 F. Supp. 2d 229, 240 (E.D.N.Y. 2010) (dismissing failure to intervene claim against a defendant who was "alleged himself to have used excessive force").

That is not to say that a defendant could *never* be liable for failure to intervene where he is alleged to have directly participated in a constitutional violation. *See Polanco v. City of New York*, No. 14 CIV. 7986 (NRB), 2018 WL 1804702, at *10 (S.D.N.Y. Mar. 28, 2018) (denying summary judgment on failure to intervene claim because "there [we]re genuine issues of material fact as to the extent of each defendant's role in the use of excessive force against plaintiff"). However, because it is undisputed all three Defendants were at all times

8

directly involved in the allegedly excessive use of force, not one Defendant had an opportunity to both "intervene in his own constitutional violation," *Flint*, 91 F. Supp. 3d at 1063, and intervene in those of his fellow Defendants. Defendants' Motion will therefore be granted in part, and judgment will be entered in Defendants' favor on Plaintiffs' failure to intervene claim (*i.e.*, Count I of the Third Amendment Complaint).

## IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted in part and denied in part. Judgment will be entered in Defendants' favor on Count I of the Third Amendment Complaint; the Motion will be denied in all other respects.

An appropriate order follows.


February 15, 2019 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge